

FILED

MAY 2 9 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

Norman Rankins V71789
(Name of Plaintiff)
PO Box 2000    M319
(Address of Plaintiff)
Vacaville CA

2:15 - CV - 1164    DAD PC
(Case Number)

vs.

Alexander Liu

Joseph Bick

(Names of Defendants)

COMPLAINT

I.  Previous Lawsuits:

A.  Have you brought any other lawsuits while a prisoner:    ☐ Yes    ☑ No

B.  If your answer to A is yes, how many?: _____  Describe the lawsuit in the space below.  (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.)

1.  Parties to this previous lawsuit:

Plaintiff _____

Defendants _____

FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983    Rev'd 5/99

3

2. Court (if Federal Court, give name of District; if State Court, give name of County)

_____

3. Docket Number _____

4. Name of judge to whom case was assigned _____

5. Disposition  (For example: Was the case dismissed? Was it appealed? Is it still pending?)

_____

6. Approximate date of filing lawsuit _____

7. Approximate date of disposition _____

II. Exhaustion of Administrative Remedies

    A. Is there a grievance procedure available at your institution?  ☑ Yes    ☐ No

    B. Have you filed a grievance concerning the facts relating to this complaint?

                                              ☑ Yes    ☐ No

        If your answer is no, explain why not _____

_____

    C. Is the grievance process completed?  ☑ Yes    ☐ No

III. Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item B for the names, positions and places of employment of any additional defendants.)

A. Defendant _Alexander Liu MD._ is employed as _Urologist_ _Surgeon_ at _San Joaquin General Hospital_

B. Additional defendants _Joseph Bick MD. Chief Medical Executive_ _at CMF prison (Vacaville)_

_____

_____

_____

_____

4

IV. Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.)

See Attached Memorandum of points and Authority.

V. Relief.

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

See Attached Memorandum of Points and Authority.

Signed this _MAY_ day of _16_ , 20 _15_ .

_(Signature of Plaintiff)_

I declare under penalty of perjury that the foregoing is true and correct.

_5-16-15_
(Date)

_(Signature of Plaintiff)_

5

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

NORMAN RANKINS
  Plaintiff,

V.

  Alexander Liu
  Joseph Bick

Complaint
Jury Trial Demanded

This is a civil rights action filed by Norman Rankins, a state prisoner for damage relief under 42 U.S.C. §1983, alleging delay and denial of medical care and treatment causing serious and substantial harm. The unnecessary and wanton infliction of pain, failure to provide adequate care for a serious medical need and deliberate indifference. These acts were committed under the color of law in violation of the Eighth Amendment of the United States Constitution.

## JURISDICTION

The court has jurisdiction under 28 U.S.C. Section 1331 and 1343 (a)(3).

The Eastern District of California is an appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to this claim occurred.

1

# Parties

2. The plaintiff, Norman Rankins, is incarcerated at CMF prison (vacaville) during the events described in this complaint.

3. Defendant Alexander Liu is a Urologist M.D. Who is employed at San Joaquin General hospital and contracted with the California Department of Corrections and Rehabilitation. He is sued in his individual capacity and official capacity.

4. Defendant Joseph Bick M.D. is the Chief Medical Officer at CMF prison (vacaville). He is sued in his individual capacity and offical Capacity.

5. All defendants have acted, and continue to act, under the color of state law at all times relevant to this complaint.

# Facts

6. On Dec, 13 2013, plaintiff was referred to San Joaquin General hospital to see a Urologist For what he was told was BPH, by the medical staff at CMF prison

7. On Feb 3, 2014, plaintiff was taken to San Joaquin hospital and met with defendant, Urologist dr. Alexander Liu, and explained to defendant that he was having to get up and urinate frequently during the night and also during the day.

8 Defendant Liu examined plaintiff, and explained that plaintiff's prostate was very enlarged and needed surgery.

9. Defendant Liu also explained that this was a very common surgery for men around the age of the plaintiff (48) at the time.

2

10. Defendant Liu also told plaintiff that sometimes after a surgery like this some men may have erectile disfunction or a loss of semenal fluid. Plaintiff said he understood and agreed to proceed.

11. On March 14, 2014. plaintiff was taken to San Joaquin hospital to have a Cystoscopy transurethral resection of prostate (turp) surgery.

12. Defendant Liu spoke to plaintiff after surgery and told him it was a successful surgery and everything went well.

13. On March 15, 2014 after only one night, defendant Liu discharged plaintiff from San Joaquin hospital and plaintiff was taken back to CMF prison.

14. On March 16, 2014 plaintiff told medical staff at CMF prison that he could not urinate without straining and having excruciating pain. Medical staff told plaintiff he would be going back to San Joaquin hospital soon for his follow up and would see defendant Liu.

15 On March 20, 2014 plaintiff was taken to San Joaquin hospital and spoke to defendant Liu and explained to him that everytime he tried to urinate he had to strain really hard and felt excruciating pain.

16. Defendant Liu told plaintiff he was to busy to look inside this day, but in two weeks he would see plaintiff again and if he was still in the same condition he would look inside then. (see Exhibit A)

17. Plaintiff asked defendant Liu to please look at it now because he was in alot of pain with the straining to urinating, but defendant Liu told him to wait for two more weeks.

18. On April 7, 2014 plaintiff was brought back to San Joaquin hospital and told defendant Liu that he was still in alot of pain from straining and it was actually worse now.

19. At this time defendant Liu performed a flexible cystoscopy to inspect plaintiff's prostate urethra. Defendant Liu found that

3

there was a chip and debri left from my surgery that was blocking my prostatic urethral channel and this is what has been causing me to strain and have so much pain. (See Exhibit B)

20. Defendant Liu stated he would try and push this chip and debri back into plaintiff's bladder and that hopefully plaintiff would urinate it out in a day or two. (See Exhibit B)

21. Plaintiff was told to come back in one week to see if the chip and debri were still obstructive, and if so the defendant would perform a formal cystoscopy and evacuation of debri from bladder.

22. On April 11, 2014, plaintiff had to be taken to Doctors Medical Center for a urgent umbilical hernia surgery necessitated because of the obstructive symptoms and the need to push out urine. (See Exhibit C&D)

23. On May 9, 2014, plaintiff was taken back to San Joaquin hospital where defendant Liu performed a second cystoscopy transurethral resection of prostate (Turp) to remove the chip and debri that was left from the first turp surgery. (see Exhibit E)

24. On May 10, 2014, plaintiff was again discharged from San Joaquin hospital after only one night and taken back to CMF prison.

25. On May 11 2014 plaintiff told medical staff that he could not control his bladder and he had urinated on himself. Plaintiff was immediately given diapers to wear, and told he would be going to see defendant Liu very soon for his follow up.

26. On May 22, 2014 plaintiff was taken to San Joaquin hospital and explained to defendant Liu that he was not in control of his bladder, and was now wearing diapers.

4

27. Defendant Liu told plaintiff he was sorry and that this condition was called incontinence and it was caused by a pre-exsisting condition the plaintiff had called a necrogenic bladder (See Exhibit F)

28. Defendant Liu also said had he known about this necrogenic bladder he would not of done the surgery.

29. Plaintiff had to remind the defendant that before plaintiff's first surgery, the defendant had ordered a ultra sound on plaintiffs bladder three months before and the results came back that plaintiffs bladder was fine. (See Exhibit G)

30. Defendant Liu told plaintiff he would try medications to try and slow down the urinating but the incontinence was permanent and the plaintiff would have to wear diapers the rest of his life.

31. Plaintiff was taken back to CMF prison and immediately asked to be taken to another urologist and not to have to go back to see defendant Liu, because of the harm he had caused him. Plaintiff was told that the CMO would not allow that, and that San Joaquin hospital was the only place I could see a urologist.

32. On June 12, 2014 plaintiff was taken to San Joaquin hospital to see defendant Liu and was given the medication "oxybutynin" 5mg to try and reduce the urinating.

33. On July 17 2014, plaintiff was taken back to San Joaquin hospital and explained to defendant Liu that the urinating was still a problem and the medication did not help at all.

Defendant Liu then suggested another medication and prescribed Vesicare 10mg

**34.** On August 14, 2014 plaintiff was taken to San Joaquin hospital and explained to defendant Liu that the medication had not helped at all. At this time defendant Liu suggested plaintiff take double the dose of Vesicare, which he did.

**35.** On October 16, 2014, plaintiff was taken to San Joaquin hospital and explained to defendant Liu that the Vesicare medication had still not helped at all and the urinating was still a problem and plaintiff was still wearing diapers. At this time defendant Liu suggested plaintiff try a medication called "Detrol" 2mg. Plaintiff agreed to try this.

**36.** On December 18, 2014 plaintiff was taken to San Joaquin hospital and explained to defendant Liu that his condition had not changed at all. Defendant Liu suggested that try the medication "Ditropan" 5mg again and that plaintiff come back in a few months so that defendant Liu could perform a cystoscopy and check plaintiff's urethra.

**37.** On March 12, 2015, plaintiff was taken to San Joaquin hospital and explained to defendant Liu that his condition had not changed at all. Defendant Liu performed a flexible cystoscopy on plaintiff at this time and explained to plaintiff that his prostate was completely healed.

**38.** Plaintiff told defendant Liu that the problems he was having because of the incontinence had caused him to have a mental health breakdown, and now he was housed in a area of the prison that was strictly for mental health.

39. Defendant Liu told plaintiff he might have some relief for a couple of hours a day from having to wear a diaper if he used a "Bard Incontinence Clamp".

40. Defendant Liu explained that the Clamp was not a fix for plaintiff's incontinence, but a simple relief for a couple of hours a day so that plaintiff could go outside and not have to be concerned about his diaper showing.

41. Defendant Liu said he would see plaintiff in two months to see how plaintiff was doing with the Clamp.

### Exhaustion of Administrative Remedies

42. The plaintiff has exhausted his administrative remedies with respect to all claims and all defendants.

I declare under penalty of perjury that the foregoing information is true, and correct. Pursuant to tittle 28, sec, 1746, Executed at CMF PO Box 2000, Vacaville CA 95696, on 5-16-15

7

Exhibit A

**SAN JOAQUIN GENERAL HOSPITAL**

**CONSULTATION**

Alexander Liu, MD
PATIENT: RANKINS, NORMAN
MR#: 1124060
ADMIT DATE:03/20/2014
LOCATION:DISC
DOB:09/16/1966

---

DATE OF CONSULTATION: 03/20/2014

CONSULTING PHYSICIAN: Alexander Liu, MD

REFERRING PHYSICIAN: Joseph Bick, MD

This is a 46-year-old male CDCR patient who underwent TURP about two weeks ago.  Currently, he is still complaining of some pain, dysuria and hematuria still going on.  However, he is voiding spontaneously and seems able to empty his bladder.

Examination today showed no distended bladder.

PLAN: My plan is for him to come back for cystoscopy in two weeks if his condition is not improved. If he feels better, then will leave him alone.


Voice #603841471/Job #130472
D: 03/20/2014 10:37:00
T: 03/20/2014 16:20:00
AL:medq

_____
Alexander Liu, MD

**CONSULTATION**

Page 1 of 1

Electronically signed by LIU, ALEXANDER on 2014-03-24 12:02:22

Alexander Liu, MD

**SAN JOAQUIN GENERAL HOSPITAL**

PATIENT: RANKINS, NORMAN
MR#: 1124060
ADMIT DATE: 04/07/2014
LOCATION: DISC
DOB: 09/16/1966

### CONSULTATION

DATE OF CONSULTATION: 04/07/2014

CONSULTING PHYSICIAN: Alexander Liu, MD

REFERRING PHYSICIAN: Joseph Bick, MD

This is a 40-year-old male CDCR patient who had undergone TURP for BPH about a month ago. Since his operation, he still complains of significant irritative voiding symptoms. He complained of dysuria and pain with urination. He voids 10 times during the day and has significant nocturia as well.

A flexible cystoscopy was performed today to inspect the prostatic urethra. Basically we found that the prostate has not completely healed yet. In addition, there is some debris that is blocking the prostatic urethral channel. This is made of a gelatinous and debris material that is broken up and pushed back into the bladder. Hopefully the patient will urinate this out over the next few days. I will plan to have him come back for followup in one week. If his obstructive symptoms still persist, he will need formal cystoscopy and evacuation of debris from the bladder.

Voice #606109361/Job #239841
D: 04/07/2014 13:42:00
T: 04/08/2014 06:26:00
AL:medq

_____
Alexander Liu, MD

**CONSULTATION**
**Page 1 of 1**

Electronically signed by LIU, ALEXANDER on 2014-04-08 10:33:47

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
Case 2:15-cv-01164-KJM-DB **CALIFORNIA MEDICAL FACILITY** Filed 06/29/15 Page 13 of 27
1600 California Drive, Vacaville, CA 95687
Tel: 707-443-6841
B-1 clinic ext: 2422
ER ext: 2318

Exhibit C

5/10/2014 9:37 PM
Rankins, N 9/16/66    V71789        G228  (5-33)

BMIP returned s/p second TURP, initially on 3,14, but he had persistent obstructive and irritative symptoms. He had a retained "chip" and had a second TURP. Since 3/14 he also had an umbilical hernia repair, necessitated because of the obstructive symptoms and the need to push out urine.

Urology f/u in 2 weeks.

PMH: unremarkable
PSH: knee surgery.
Med Rec: reviewed, reconciled. Continued Bactrim DS for only 3 days since urology did not recommend.
Allergies: Cardura

151/94, 59/min, 18/min, 100% RA    Healthy appearing BMIP in NAD. Skin warm and dry. Pulse regular. Muscular. Heart RRR w/o m/g. Lungs CTA. Abd soft and NTTP.

A: s/p second TURP. He will need urology f u and then since he is Med and Return, he can go back to PBSP.

P: TIII, Bactrim DS for 3 days only

E: simple English, understood



David Mathis MD
David.Mathis@CDCR.CA.GOV

Physician & Surgeon
Covering MD

**HEALTH CARE SERVICES**

1

Exhibit D

V 71789

DOCTORS MEDICAL CENTER
San Pablo Campus 2000 Vale Road. San Pablo, CA 94806
PT: RANKINS, NORMAN   DOB: 09/16/1966
ADM: 04/11/2014
ACCT: 001300181773  MR#: 000020023009  ROOM:
Collin Mbanugo, MD*  201404110990248200
AUTH ID: 138

PREOPERATIVE HISTORY AND PHYSICAL EXAM


CHIEF COMPLAINT:
The patient has an intermittently incarcerated umbilical hernia.

HISTORY OF PRESENTING ILLNESS:
This is a 47-year-old man who is referred with an intermittently
incarcerating umbilical hernia.  This has been ongoing for about
the last 3 weeks and has been having to be reduced multiple times
with constant discomfort.  There is no nausea, and there is no
vomiting.  Therefore bowel is not likely involved with this, but
given the level of intermittent discomfort, an urgent repair of
this hernia will be recommended.

PAST MEDICAL HISTORY:
The patient has been healthy in the past.  No history of diabetes
mellitus or hypertension.  He, however, has had a history of a
transurethral resection of prostate that was done last month, and
he continues to have some dribbling of his urine at this point.

PAST SURGICAL HISTORY:
Other surgical history includes history of knee surgery.

Otherwise, he appears to be in good health.

REVIEW OF SYSTEMS:
By 10-point review of systems, there is no chest pain, shortness
of breath, or any other neuropsychiatric symptoms.

PHYSICAL EXAMINATION:
SKIN:  Unremarkable.
HEENT:  He is normocephalic.
NECK:  Without jugular venous distention.
LUNGS:  Clear.
CARDIAC EXAM:  Regular.
ABDOMEN:  An intermittently incarcerating umbilical hernia is
present.  In fact, the incarceration appears to be coming just at
the level of the umbilicus and slightly above.
NEUROLOGICAL EXAM:  Grossly intact.

PRINTED BY: MARamos          DATE    04/23/2014

Alexander Liu, MD

**SAN JOAQUIN GENERAL HOSPITAL**

**REPORT OF OPERATION**

PATIENT: RANKINS, NORMAN
MR#: 1124060
ADMIT DATE:05/09/2014
LOCATION:3C MED/SG
DOB:09/16/1966

OPERATION PERFORMED: Cystoscopy, transurethral resection of prostate.

DATE OF OPERATION: 05/09/2014

SURGEON: Alexander Liu, MD

PREOPERATIVE DIAGNOSIS: Benign prostatic hypertrophy.

POSTOPERATIVE DIAGNOSIS: Benign prostatic hypertrophy.

SURGEON: Alexander Liu, MD

ANESTHESIA: General.

INDICATION FOR PROCEDURE: This is a gentleman who has history of BPH. He underwent TURP about two months ago. Postoperatively, he continued to have significant obstructive and irritative voiding symptoms. This was thought initially due to a retained prostate chip, but after removal of the chip he continued to have significant symptoms. After discussion with the patient about treatment options, he decided to proceed with cystoscopy and possible re-do TURP.

PROCEDURE: The patient was brought to operating room. After given general anesthetic, he was placed in the dorsal lithotomy position. The penis and perineal area were prepped with Betadine and draped in usual fashion for cystoscopy. After confirmation of adequate anesthesia, the 26-French cystoscope was inserted without difficulty. Examination using the 30-degree lens showed no mucosal lesions, stones or infection in the bladder. The ureteral orifices are in their usual locations. There is some residual prostate tissue at the apex level, and also we noted some areas that have not completely healed yet. The resection element was then introduced and was connected to the bipolar electrosurgical machine. The residual prostate tissues at the apical position was removed first. Then we re-examined the bladder and the tissue that is not well healed were also resected; thereby completely opening the prostate channel. At the end of the procedure, the prostatic urethra is wide open and there is no sign of obstruction of any sort. The bladder was emptied and the scope removed under direct vision. The patient tolerated the procedure well. There was less than 20 mL blood loss. He was given a three-way Foley catheter, 24-French, that was connected to gravity drainage. Continuous irrigation was started with normal saline. Patient was woken up and transferred to recovery room in stable condition.

**REPORT OF OPERATION**

Page 1 of 2

Electronically signed by LIU, ALEXANDER on 2014-05-12 10:23:05

Exhibit F

**SAN JOAQUIN GENERAL HOSPITAL**

**CONSULTATION**

Alexander Liu, MD

PATIENT: RANKINS, NORMAN
MR#: 1124060
ADMIT DATE: 06/12/2014
LOCATION: DISC
DOB: 09/16/1966

---

DATE OF CONSULTATION: 06/12/2014

CONSULTING PHYSICIAN: Alexander Liu, MD

REFERRING PHYSICIAN: Joseph Bick, MD

HISTORY OF PRESENT ILLNESS: This is a 48-year-old male CDCR patient who presented with obstructive urinary symptoms and an enlarged prostate. He underwent TURP about two months ago but postoperatively, he continued to have irritative voiding symptoms. After review of the patient's situation and examination, I believe that the patient most likely has developed a neurogenic bladder prior to operation and now that we have resected the prostate it unmasked a neurogenic bladder that was not appreciated before. At this time, the patient still complains of pain with urination and dysuria. The prostate should have healed by now.

I spent time discussing the situation with the patient.  I suggest that he try oxybutynin 5 mg p.o. t.i.d. to help reduce the bladder spasms.  I will plan to see him again in one month to check his progress.


Voice #614458595/Job #326762
D: 06/12/2014 10:29:00
T: 06/12/2014 16:49:00
AL:medq

_____
Alexander Liu, MD

---

**CONSULTATION**

Page 1 of 1

Electronically signed by LIU, ALEXANDER on 2014-06-19 13:14:33

FAMILY HISTORY: Negative for prostate problems.

PAST MEDICAL HISTORY: Essentially negative. No significant cardiopulmonary problems.

PAST SURGICAL HISTORY: Significant only for knee surgery.

CURRENT MEDICATIONS: Include:

1. Tamsulosin.

2. Finasteride. Both are not helpful. He has been taking it for the past six to seven months.

ALLERGIES: HE HAS NO KNOWN ALLERGIES.

SOCIAL HISTORY: Does not smoke or drink much alcohol.

REVIEW OF SYSTEMS: Essentially negative.

PHYSICAL EXAMINATION: GENERAL: He is a well-developed gentleman, in no acute distress.
VITAL SIGNS: Afebrile. Vital signs stable.

HEAD AND NECK: Unremarkable.
LUNGS: Clear.
HEART: Sounds are normal.
ABDOMEN: Benign.
EXTREMITIES: Fine.
NEUROLOGIC: Grossly intact.
RECTAL: Prostate exam revealed an enlarged prostate, which is about 60 to 70 g, with no obvious nodules and no sign of tenderness.

IMPRESSION: My impression is that this gentleman has benign prostatic hyperplasia. No signs of prostate cancer. He has significant bladder outlet obstruction symptoms, which are not relieved by alpha blockers and finasteride. My impression is that he is going to need a TURP. I explained the nature of the operation, as well as the pros and cons to

---

HISTORY & PHYSICAL PRE-ADMIT
Page 1 of 2

Electronically signed by LIU, ALEXANDER on 2014-02-18 12:06:26

 **CALIFORNIA CORRECTIONAL**
# HEALTH CARE SERVICES


**Date:** JAN 22 2015

**To:**   RANKINS, NORMAN (V71789)
California Medical Facility
P.O. Box 2000
Vacaville, CA 95696-2000

**From:**   California Correctional Health Care Services
Inmate Correspondence and Appeals Branch
P.O. Box 588500
Elk Grove, CA 95758

**Tracking/Log # :**   CMF HC 14040334

This appeal was reviewed by Inmate Correspondence and Appeals Branch staff on behalf of the Deputy Director, Policy and Risk Management Services. All submitted information has been considered.

**DIRECTOR'S LEVEL DECISION:**

Appeal is denied. This decision exhausts your administrative remedies.

**APPEAL REQUESTS:**

You are requesting monetary compensation due to your allegation of permanent disability due to medical negligence.

**BASIS FOR DIRECTOR'S LEVEL DECISION:**

Your appeal file was reviewed by staff. These records indicate:

- Monetary compensation is beyond the scope of the appeals process. If you are dissatisfied with this appeal response concerning your request for monetary compensation, you may wish to contact the California Victim Compensation and Government Claims Board, P. O. Box 3035, Sacramento, CA 95812-3035.

After review, no intervention at the Director's Level of Review is necessary.

**RULES AND REGULATIONS:**

The rules governing these issues are:  California Code of Regulations, Title 15; Inmate Medical Services Policies and Procedures; and the Department Operations Manual.

**ORDER:**

No changes or modifications are required by the institution.

J. Lewis, Deputy Director
Policy and Risk Management Services
California Correctional Health Care Services

STATE OF CALIFORNIA                                                DEPARTMENT OF CORRECTIONS AND REHABILITATION

**PATIENT-INMATE HEALTH CARE APPEAL**

CDCR 602 HC (REV. 6/13)                                                                          Page 1 of 2

| STAFF USE ONLY Emergency Appeal | ☐ Yes  ☒ No | Institution: CMF-HC | Log #: 14040334 | Category: med |
|---|---|---|---|---|
| Signature: | Date: 12/24/14 | | FOR STAFF USE ONLY | |

You may appeal any medical, mental health, or dental decision, action, condition, omission, policy or regulation that has a material adverse effect upon your welfare. See California Code of Regulations, Title 15, Section (CCR) 3084.1. You must send this appeal and any supporting documents to the Health Care Appeals Coordinator (HCAC) within 30 calendar days of the event that led to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.                    **WRITE, PRINT, or TYPE CLEARLY.**

| Name (Last, First): Rankins, Norman | CDCR Number: V71799 | Unit/Cell Number: M3 319 | Assignment: |
|---|---|---|---|

State briefly the subject/purpose of your appeal (Example: Medication, To See Specialist, etc.):
Permanent disibility due to Medical Negligence

**SECTION A.** Explain your issue (If you need more space, use Section A of the CDCR 602-A): I was referd to San Jaquin hospital from CMF. I have had two Turp surgerys at San Jaquin hospital this year. One on March 14th and the second in May. The reason I had to have a second surgery a month after the first was because the surgeon did a scope

**SECTION B.** Action requested (If you need more space, use Section B of the CDCR 602-A):
Monitary damages

☐ **Supporting Documents: Refer to CCR 3084.3.**

List supporting documents attached (e.g., Trust Account Statement; CDCR 7410, Comprehensive Accommodation Chrono; CDCR 7362, Request for Health Care Services; etc.):

☐ No, I have not attached any supporting documents. Reason:

Patient-Inmate Signature: _Norm Rankins_                       Date Submitted: 12-14-14

☐ By placing my initials in this box, I waive my right to receive an interview.

| SECTION C. FIRST LEVEL - Staff Use Only | Check One: Is CDCR 602-A attached? | ☐ Yes  ☐ No |
|---|---|---|
| This appeal has been: | Check One: Is this a recategorized/converted 1824? | ☐ Yes  ☐ No |

☐ Bypassed at the First Level of Review. Go to Section E.
☐ Rejected (See attached letter for instruction):  Date:_____ Date:_____ Date:_____ Date:_____
☐ Cancelled (See attached letter):  Date:_____
☐ Accepted  Assigned to:_____  Title:_____  Date Assigned:_____ Date Due:_____

First Level Responder: Complete a First Level response. Include interviewer's name, title, interview date, location, and complete the section below.

Date of Interview:_____  Interview Location:_____

Your appeal issue is:  ☐ Granted  ☐ Granted in part  ☐ Denied  ☐ Other:_____
See attached letter. If dissatisfied with First Level response, complete Section D.

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | Interview conducted?  ☐ Yes  ☐ No | |
|---|---|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ P/I asked questions | Interviewer: | Title: |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ P/I summed information | (Print Name) | |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | **Please check one:** | Signature: | Date completed: |
| ☐ DNS ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached* ☐ Reached | | |
| ☐ Not Applicable | ☐ Other* | *See chrono/notes | Reviewer: | Title: |
| 4. Comments: | | | (Print Name) | |
| | | | Signature: | |

| HCAC Use Only | HCAC Use Only |
|---|---|
| Date received by HCAC: | Date closed and mailed/delivered to appellant: |

RECEIVED DEC 16 2014 HC APPEALS

COMPLETED JAN 7 2015 STAFF USE ONLY HC APPEALS

OTLA-HC JAN 22 2015 COMPLETED HC APPEALS

**PATIENT-INMATE HEALTH CARE APPEAL**
CDCR 602 HC (Rev. 06/13)                                                                                    Page 2 of 2

**SECTION D. If you are dissatisfied with the First Level** response, explain the reason below, attach supporting documents and submit to the Health Care Appeals Coordinator for processing within 30 calendar days of receipt of response. If you need more space, use Section D of the CDCR 602-A.

Patient-Inmate Signature: _____    Date Submitted: _____

**SECTION E. SECOND LEVEL - Staff Use Only**    Check One: Is CDCR 602-A attached?    ☒ Yes    ☐ No

This appeal has been:                          Check One: Is this a recategorized/converted 1824?    ☐ Yes    ☒ No

☐ Bypassed at Second Level of Review. Go to Section G.

☐ Rejected (See attached letter for instruction):    Date: _____ Date: _____ Date: _____ Date: _____

☐ Cancelled (See attached letter):    Date: _____

☒ Accepted    Assigned to: Di Tomaza S. Prevette    Title: HG,PA    Date Assigned: 12/16/14    Date Due: 1/29/15

Second Level Responder: Complete a Second Level response. Include Interviewer name, title, interview date, location, and complete the section below.

Date of Interview: 01/07/15    Interview Location: M-3 Office

Your appeal issue is:    ☐ Granted    ☐ Granted in part    ☒ Denied    ☐ Other: _____
See attached letter.  If dissatisfied with Second Level response, complete Section F.

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | Interview conducted?  ☒ Yes  ☐ No |
|---|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ P/I asked questions | Interviewer: S. Prevette,  Title: HG,PA |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ P/I summed information | (Print Name) |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | **Please check one:** | Signature: Susann Prevette  Date completed: 01/07/15 |
| ☐ DNS ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached*  ☒ Reached | Reviewer: Jack Chen  Title: CEO |
| ☒ Not Applicable | ☐ Other* | *See chrono/notes | (Print Name) |
| 4. Comments: TABE = 6.9; EDP; NCF | | | Signature: Jack Chen |

HCAC Use Only
Date received by HCAC: _____

HCAC Use Only
Date closed and mailed/delivered to appellant: 1/8/15

**SECTION F. If you are dissatisfied with the Second Level response,** explain reason below; attach supporting documents and submit by mail for Third Level Review.  It must be received within 30 calendar days of receipt of prior response. Mail to: Health Care Appeals, ATTN: Chief, Building C, P.O. Box 588500, Elk Grove, CA 95758.  If you need more space, use Section F of the CDCR 602-A.

I believe it is very clear in all the medical records that were reviewed that I have suffered great injury due to the negligence of the surgeon Dr Alexander Liu and San Joaquin General Hospital. And because of this my 602 should be granted.

Patient-Inmate Signature: Norm Render    Date Submitted: 1-9-15

**SECTION G. THIRD LEVEL - Staff Use Only**

☐ Rejected (See attached letter for instruction):    Date: JAN 2 2 2015  Date: _____ Date: _____ Date: _____

☐ Cancelled (See attached letter):    Date: _____

☒ Accepted at the Third Level of Review

Your appeal is:    ☐ Granted    ☐ Granted in part    ☒ Denied    ☐ Other: _____
See attached Third Level response.

Third Level Use Only
Date closed and mailed/delivered to appellant: JAN 2 2 2015

**Request to Withdraw Appeal:** I request that this appeal be withdrawn from further review because; State reason. (If withdrawal is conditional, list conditions.)

Patient-Inmate Signature: _____    Date Submitted: _____

Print Staff Name: _____  Title: _____  Signature: _____  Date: _____

STAFF USE ONLY

COMPLETED
OTLA
JAN 22 2015
HC APPEALS

**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (08/09)

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | | | |
| | **FOR STAFF USE ONLY** | | |

Attach this form to the CDCR 602, only if more space is needed.  Only one CDCR 602-A may be used.

**Appeal is subject to rejection if one row of text per line is exceeded.**     **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): Rankins, Norman | CDC Number: V71789 | Unit/Cell Number: M3 314 | Assignment: |
|---|---|---|---|

**A.  Continuation of CDCR 602, Section A only (Explain your issue) :** examination on me on a follow up right after my first surgery and found that he had left a chunk and debree inside and had to go back in. Because I was in so much pain and could not urinate without alot of pain, the surgeon did the second surgery in May. After the second surgery I was left with no control over my bladder. I was taken back to san Jaquin hospital and told by the surgeon that my condition was permenent and could not be fixed, and I would have to wear pull up diapers for the rest of my life.

    I have suffered a permanent dissibility because this doctor failed to do his job correctly the first time. He has been trying too different medications on me to see if they might slow my urinating down, none have worked and I continue to wear pull up diapers.

Inmate/Parolee Signature: _Norm Rankin_      Date Submitted: 12-14-14

**B.  Continuation of CDCR 602, Section B only (Action requested):** _____

Inmate/Parolee Signature: _____      Date Submitted: _____

RECEIVED DEC 16 2014 HC APPEALS

COMPLETED JAN - 8 2015 HC APPEALS

COMPLETED OTLA-HC JAN 22 2015 HC APPEALS

**D.  Continuation of CDCR 602,  Section D only (Dissatisfied with First Level response):** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Inmate/Parolee Signature:** _____  **Date Submitted:** _____

**F.  Continuation of CDCR 602, Section F only (Dissatisfied with Second Level response):** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Inmate/Parolee Signature:** _____  **Date Submitted:** _____

# Claims for Relief

43. The action of defendant Liu in refusing to examin plaintiff during the follow up one week after plaintiff's turp surgery, after being told by plaintiff he was in excruciating pain from the straining to urinate, constitutes deliberate indifference to plaintiff's serious medical needs, in violation of the Eighth Amendment to the United States Costitution.

44. The actions of defendant Liu in delaying and denying his exam of plaintiff during the follow up to plaintiff's turp surgery, constitutes the unnecessary and wanton infliction of pain and suffering, constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

45. The failure of defendant Liu to treat the seriousness of plaintiff's complaints of pain and suffering during the follow up, caused plaintiff serious and substantial harm in the form of a emergency umbilical hernia surgery.

46. Defendant Liu knew or should of known that his conduct, attitude and action created an unreasonable risk to plaintiff's health and safety, and was deliberately indifferent to plaintiff's serious medical needs.

47. Defendant Liu violated plaintiff's rights to be free from cruel and unusual punishment guaranteed to plaintiff by the Eighth Amendment of the United States Constitution by his failure to treat a serious medical need, that resulted in further significant injury.

48. As a direct and forseeable result of the

defendant's violation of the Eighth Amendment, plaintiff has suffered, is suffering and will continue to suffer injuries in the form of shame, humiliation, degradation, emotional distress, embarrassment, mental distress, and other injuries.

49. As a direct and forseeable result of the defendant's violation of the Eighth Amendment, plaintiff has suffered, is suffering and will continue to suffer in the form of permanent incontinence and irreparable harm.

50. The actions of defendant Bick in sending plaintiff back to San Joaquin hospital to see defendant Liu after knowing that plaintiff had suffered irreparable harm because of defendant Liu, constitute deliberate indifference, to plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

51. Defendant Bick violated plaintiff's right to be free from cruel and unusual punishment guaranteed to the plaintiff by the Eighth Amendment of the Uninted States Constitution by continuing to refer plaintiff back to defendant Liu for medical treatment long after he became aware of the pain and suffering defendant Liu had caused plaintiff.

52. As a direct and foreseeable result of the defendants violation of the Eighth Amendment, plaintiff has suffered, is suffering and will continue to suffer in the form of shame, humiliation, degradation, emotional distress, embarrassment, mental distress and other injuries.

53. Defendant Bick knew or should of known that his conduct, attitudes and action created an unreasonable risk of serious harm to plaintiff.

54. Defendant Bick's acts were willful and wanton, intentional, malicious and despicable in conscious disregard of plaintiff's Eighth Amendment rights to be free from cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution.

I declare under penalty of perjury that the foregoing information is true, and correct.

Pursuant to Title 28, Sec. 1746, executed at CMF

P.O. Box 2000, Vacaville CA 95696, on 5-16-15

## Relief Requested

WHEREFORE, plaintiff requests that the court grant the following relief:

A. Issue a declaratory judgment stating that:

1. Defendant Liu's actions in failing to provide adequate medical care for the plaintiff, and the delay and denial of treatment violated and continue to violate the plaintiff's rights under the Eighth Amendment to the United States Constitution.

2. Defendant Bick's actions in failing to provide adequate medical care for the plaintiff violated and continue to violate the plaintiff's rights under the Eighth Amendment to the United States Constitution.

B. Issue an injunction ordering defendant Bick to:

1. Immediately arrange for the plaintiff to be evaluated by a medical practitioner with expertise in the treatment of prostate issues.

C. Award Compensatory damages in the following amounts

1. 500,000 jointly and severally against defendants Liu and Bick for the physical and emotional injuries sustained as a result of the delay and denial of treatment and the failure to provide adequate medical care to plaintiff.

D. Award punitive damages in the following amounts:

1. 1.5 Million in punitive damages against Defendant Liu

2. 500,000.00 in punitive damages against Defendant Bick

E.
   Grant such other relief as it may appear that plaintiff is entitled.

5-16-15

**Case Name:** _____

**Case Number:** _____

**Court:** _____

# PROOF OF SERVICE BY MAIL

I, _Norman Rankins_ declare:

That I am over the age of eighteen years of age and am not a party to the above entitled cause of action. That I reside in Solano County, California at the California Medical Facility, at 1600 California Drive, P.O. Box 2500, Vacaville, California, 95696-2500.

That on _5-22-15_ I served the attached: a true copy of the attached:

1. 42 USC 1983 Civil right Complaint
2. Exhibits A through H
3. Motion to Appoint Counsel
4. A Copy of All

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal legal mail collection system at the California Medical Facility, Vacaville, California, addressed as follows:

Clerk of the U.S. District Court
For The Eastern District of California
501 I Street, Room 4-400
Sacrament, California 95814

I declare under penalty of perjury and under the laws of the State of California that the foregoing is true and correct. That this proof of service was executed on _5-22-15_ at the California Medical Facility, Vacaville, California.

_Norman Rankins_
**Declarant**

_[signature]_
**Declarant's Signature**