Michael R. Mordaunt, Esq., Bar No. 66911
Lori A. Reihl, Esq., Bar No. 246395
RIGGIO MORDAUNT & KELLY
A Professional Law Corporation
Mailing Address: P.O. Box 7608
Stockton, CA 95267
Physical Address: 2509 W. March Lane, Suite 200
Stockton, CA 95207
Telephone: (209) 473-8732

Attorneys for Defendant
ALEXANDER LIU, M.D.

UNITED STATES DISTRICT COURT OF CALIFORNIA

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMAN RANKINS,<br><br>    Plaintiff(s),<br><br>vs.<br><br>DR. ALEXANDER LIU,<br><br>    Defendant(s). | Case No. 2:15-CV-01164-KJM-AC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALEXANDER LIU, MD'S MOTION FOR SUMMARY JUDGMENT**<br><br>*Fed.R.Civ.Proc. 56; L.R. 230, 260* |

I.   INTRODUCTION

Plaintiff's complaint states a single cause of action against defendant Alexander Liu, MD under 42 U.S.C. §1983, alleging a violation of his Eighth Amendment rights associated with medical care that was provided to him by Dr. Liu, while an inmate at the California Department of Corrections. However, there is no disputed material issue of fact in this action since plaintiff cannot establish that necessary elements of this action that Dr. Liu acted with deliberate indifference or any direct causal connection to the constitutional violation at issue and his alleged harm. Therefore, defendant Alexander Liu, MD moves for summary judgment against plaintiff.

II.  FACTUAL BACKGROUND

Plaintiff, Norman Rankins, an inmate with the California Department of Corrections, was referred to San Joaquin General Hospital for evaluation of BPH (benign prostatic hyperplasia) after unsuccessful trials of alpha blockers as well as finasteride. (See Separate Statement of Undisputed Material Facts "UMF", 1.) Plaintiff was seen by defendant Alexander Liu, MD on February 3,

2014 with complaints of nocturia four to five times every night, and daytime urinary frequency. (UMF, 2.) A prostate exam revealed an enlarged prostate with no obvious nodules and no signs of tenderness. (UMF, 3.) The patient was assessed with lower urinary tract symptoms (LUTS) with significant bladder outlet obstruction symptoms (benign prostatic hyperplasia, BPH) that were not relieved with medications. (UMF, 4.) Dr. Liu concluded the patient may benefit from a TURP (transuretheral resection of the prostate) and presented this option to Mr. Rankins. (UMF, 5)

Prior to the procedure, Dr. Liu discussed the risks and benefits of the procedure with the patient, including the risk of incontinence. (UMF, 6.) After discussing the risks and benefits, plaintiff consented to proceed with the TURP surgery. (UMF, 7.)

The TURP surgery was performed by Dr. Liu on March 14, 2014 at San Joaquin General Hospital. During the procedure Dr. Liu found an enlarged prostate with trilobar hyperplasia. The prostate was resected without complication. (UMF, 8.) Plaintiff was discharged the next day on March 15, 2014 and scheduled for post-operative follow up with Dr. Liu. (UMF, 9.)

On or about March 18, 2014 plaintiff was seen by jail medical staff for a small umbilical hernia. According to plaintiff, that doctor at the prison reduced the hernia, but it returned so he was sent to San Joaquin General Hospital for evaluation. (UMF, 10.) At the hospital the patient reported a painful umbilical hernia for the last two to three days. A CT of the abdomen and pelvis revealed very tiny umbilical hernia containing only fat. The bladder was grossly normal. (UMF, 11.) The hernia was reduced and the patient was discharged back to prison. (UMF, 12).

Plaintiff reports that when he got back to the prison that day the hernia bulged out again and he was referred for surgical repair. (UMF, 13.) The surgical repair was eventually completed on or about April 11, 2014. (UMF, 14.)

On March 20, 2014, plaintiff was seen by Dr. Liu for his first post-operative visit. (UMF, 15.) Plaintiff was seen in a private room by Dr. Liu where he expressed his complaints of ongoing pain after surgery. Plaintiff testifies that he also reported complaints of difficulty urinating. (UMF, 16.) Dr. Liu also noted complaints of dysuria and hematuria, and that examination showed no distended bladder. (UMF, 17.) Dr. Liu instructed the patient to return in 2 weeks to evaluate whether his condition had improved, as his symptoms were still constituent with the post-operative

course of a TURP. If it had improved, the plan was to leave it alone. If it had not, a cystoscopy would be performed for further evaluation. (UMF, 18.) Based on Dr. Liu's review of the patient, along with my education, training and experience, there was no indication that the patient faced a substantial risk of serious harm with this plan. (UMF, 19.)

The patient returned on April 7, 2014, with continued complaints of significant irritative voiding symptoms. (UMF, 20.) With these continued complaints, a cystoscopy was performed as planned. (UMF, 21.) The cystoscopy revealed that the prostate had not completely healed yet and there was some debris blocking the prostatic urethral channel. The debris material was broken up and pushed back into the bladder, as it would likely spontaneously pass with urination. (UMF, 22.) Dr. Liu advised the patient to return in 1 week to evaluate whether his symptoms had been relieved by this procedure. The patient was advised that if his symptoms persisted, he would require a further cystoscopy with evacuation of debris from the bladder. (UMF, 23.)

Following that procedure, plaintiff continued to complain of dysuria and restriction symptoms. (UMF, 24.) Dr. Liu concluded that the prostate was incompletely resected or the patient may have scar tissue in the prostate and urethral area, and would need a repeat TURP. Treatment options, risks and benefits were discussed with the patient. (UMF, 25) Plaintiff understood that there were risks involved with a second TURP procedure, including incontinence, and elected to proceed with the procedure. (UMF, 26.)

On May 9, 2014, Dr. Liu performed a cystoscopy and TURP which revealed some residual prostate tissue and some areas that had not completed healed yet. (UMF, 27.) The procedure was completed without complication and the patient was discharged home the next day voiding well, and the patient was discharged on May 10, 2014. (UMF, 28).

The patient returned to Dr. Liu on May 22, 2014 for a post-operative examination. The patient reported ongoing complaints of significant pain and bladder spasms. (UMF, 29.) He then continued to follow up with Dr. Liu for treatment of incontinence through August 11, 2016. Plaintiff continues to complain of ongoing incontinence. (UMF, 30.)

### Plaintiff's allegations

Plaintiff's complaint alleges a single cause of action against Dr. Liu under 42 U.S.C. §1983,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALEXANDER LIU, MD'S MOTION FOR SUMMARY JUDGMENT

alleging that he was deliberately indifferent to his medical needs. (See Third Amended Complaint, Docket No. 40; See also Declaration of Lori A. Reihl ¶ 3 and Exhibit B attached thereto.) Plaintiff's action is based on his initial post-operative visit with Dr. Liu on March 20, 2014 following his first TURP surgery. Specifically, plaintiff takes issue with Dr. Liu's decision not to perform the cystoscopy or other imaging procedure at the time of his visit on March 20, 2014. (UMF, 31.) It is plaintiff's allegation that Dr. Liu refused to conduct an x-ray or other testing to look "inside" that day to see why he was experiencing. As a result, plaintiff alleges that there was a delay in recognizing a blockage causing his incontinence (UMF, 32.)

Plaintiff also initially alleged in this action that this delay also resulted in him developing a hernia. However, plaintiff has since acknowledged that it would not have prevented the hernia since the hernia developed even before his first post-operative visit with Dr. Liu. (UMF, 33.)

### Declaration of Dr. Evans

Accompanying this motion is the declaration of Christopher P. Evans, MD. Dr. Evans is board certified urologist and has been a fellow of the American College of Surgeons since 2000. The declaration of Dr. Evans establishes that the care and treatment provided to Norman Rankins by Dr. Liu was appropriate, indicated, and well within the standard of care for a physician practicing under the same or similar circumstances. (UMF, 34-39.) Additionally, there was no negligent act or omission by Dr. Liu, or delay in care, which constituted a substantial factor in the injuries alleged by plaintiff. None of the patient's symptoms, including post-surgical pain, hernia, and incontinence were caused by any negligent act by Dr. Liu, nor were any of the alleged injuries or symptoms caused by any delay in the care provided by Dr. Liu. (UMF, 40-44.)

## III. AUTHORITY

Rule 56 of the Federal Rules of Civil Procedure provides for summary judgments where, "there is no genuine issue as to any material fact." Fed.R.Civ.Proc. 56(c)). Under summary judgment practice, the moving party "bears the initial responsibility of informing the District Court of the basis for its motion…which it believes demonstrate the absence of a genuine issue of material fact. (Celotex Corp. v. Catrett (1986) 477 U.S. 317, 323.) "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may

properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admission on file.'" (Id. at 324.)

When the moving party meets its initial responsibility, the burden then shifts to the opposing party to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" (Matsushita Elec. Indus. Co. v Zenith Radio Corp. (1986) 475 U.S. 574, 586-587.) Mere allegations, speculation, or the existence of a scintilla of evidence are all insufficient to create a genuine issue of material fact in order to preclude summary judgment. (See Nelson v. Pima Community College (9th Cir. 1996) 83 F.3d 1075, 1081-1082.) The opposing party must demonstrate that the facts in contention are material such that it would affect the outcome of the suit. (Anderson v. Liberty Lobby, Inc. (1986) 477 U.S. 242, 248.) Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" (Matsushita Elec. Indus. Co. v Zenith Radio Corp. (1986) 475 U.S. at 587.)

## III. ARGUMENT

### A. Dr. Liu Was Not Deliberately Indifferent To Plaintiff's Serious Medical Needs.

#### 1. Legal Standard

Plaintiff has brought this action under 42 U.S.C. §1983. Section 1983 creates a cause of action "against any person who, acting under color of state law, abridges 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." (Save Our Valley v. Sound Transit (9th Cir. 2003) 335 F. 3d 932, 936.)

To state a claim under 42 U.S.C. §1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show the alleged deprivation was committed by a person acting under color of state law." (West v Atkins (1988) 487 US 42, 48-49) Thus, in this action plaintiff must show that defendant was acting under color of state law *and* intentionally deprived plaintiff of constitutional or civil rights.

Plaintiff asserts his 42 U.S.C. §1983 claim, by alleging a deprivation of his Eighth Amendment rights with respect to medical care provided to him as an inmate. In order to state a claim under the Eighth Amendment, plaintiff must allege actions by a defendant that constitute

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALEXANDER LIU, MD'S MOTION FOR SUMMARY JUDGMENT

deliberate indifference to plaintiff's serious medical needs. (Estelle v. Gamble (1976) 429 US 97.) A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." (Estelle v. Gamble, 429 U.S. at 104.)

A defendant violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious. Second, defendant must have a "sufficiently culpable state of mind," that is, one of deliberate indifference to the inmate's health or safety. (Farmer v. Brennan (1994) 511 U.S. 825, 833-834.) A person acts with deliberate indifference if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. (Farmer v. Brennan (1994) 511 U.S. 825, 847.) Liability requires a showing that defendant knows of and disregards an excessive risk to inmate health or safety. The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. (Id. at 837.)

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." (Broughton v. Cutter Labs. (9th Cir. 1980) 622 F.2d 458, 460, citing Estelle v. Gamble, 429 U.S. at 105-06.) As explained in Rojo v. Paramo (S.D. Cal. 2014) 2014 U.S. Dist. LEXIS 8016:

> "The Eighth Amendment does not require that Plaintiff receive 'unqualified access to health care,' Hudson v. McMillian, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992), nor does it entitle to him to the treatment he wants. Tolbert v. Eyman, 434 F.2d 625, 626 (9th Cir. 1970). Indeed, a difference of opinion between Plaintiff and his doctor as to which medications are appropriate for his conditions, is not sufficient to support a claim of deliberate indifference. (Citations omitted.)." (Id. at 10-11.)

"[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." (Estelle v. Gamble, 429 U.S. at 106.) Even gross negligence is insufficient to establish

Riggio Mordaunt & Kelly
P.O. Box 7608
Stockton, CA 95267
(209) 473-8732

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALEXANDER LIU, MD'S MOTION FOR SUMMARY JUDGMENT

deliberate indifference to serious medical needs. (See Wood v. Housewright (9th Cir. 1990) 900 F.2d 1332, 1334-1335.)

### B. Plaintiff Cannot Establish Deliberate Indifference Since Dr. Liu's Care and Treatment was Appropriate and Within the Standard of Care.

Plaintiff's action is based entirely on his disagreement with the treatment that was provided by Dr. Liu. However, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Wild (9th Cir. 1989) 891 F.2d 240, 242. As the Supreme Court has explained that whether additional diagnostic techniques or forms of treatment are indicated is a classic example of a matter for medical judgment and does not represent cruel and unusual punishment. (Estelle v. Gamble (1976) 429 U.S. 97, 107)

Plaintiff's Eighth Amendment claim against Dr. Liu fails because Dr. Liu provided plaintiff with appropriate care and there was no indication that the patient faced a substantial risk of serious harm with Dr. Liu's plan of care. As the declaration of Christopher Evans, MD accompanying this motion, along with the records in this case establishes, the care and treatment provided by Dr. Liu was appropriate, indicated and well within the standard of care. (UMF, 34.)

As established by board certified urologist Christopher P. Evans, MD, Noman Rankins Norman Rankins was an appropriate candidate to undergo both TURP surgeries. Both the type of surgery and the performance of the surgeries by Dr. Alexander Liu on March 14, 2014 and May 9, 2014 were appropriate and within the standard of care. Plaintiff was appropriately informed of the risks and benefits of the surgeries, including the risk of incontinence, and consented to the procedures. (UMF, 7, 26.)

Additionally, plaintiff's complaints at the time of his first post-operative visit with Dr. Liu on March 20, 2014, are common post-surgical complaints following a TURP procedure. While plaintiff alleges in the complaint Dr. Liu "refused" to see him, he clarified at deposition that his allegation is not that Dr. Liu did not consult with him at all that day. Instead, his complaint is on the extent of the consultation provided by Dr. Liu. (UMF, 15-19.)

However, Dr. Liu's initial response of electing to wait another two weeks to evaluate whether the patient's post-surgical symptoms would resolve was appropriate and well within the

Riggio Mordaunt & Kelly
P.O. Box 7608
Stockton, CA 95267
(209) 473-8732

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALEXANDER LIU, MD'S MOTION FOR SUMMARY JUDGMENT

standard of care, particularly since plaintiff's symptoms were still consistent with the post-operative course of a TURP. (UMF, 36.) While it is plaintiff's personal opinion that Dr. Liu should have performed the cystoscopy that day or some other test to look "inside," the evidence presented with this motion establishes that it was appropriate and within the common practice of surgeons to not proceed with a cystoscopy while the patient still healing from the initial TURP procedure, just as Mr. Rankins was still healing at the time of the March 20, 2014 visit. (UMF, 37-38.) Further, based on Dr. Liu's review of the patient, along with his education, training and experience, there was no indication that the patient faced a substantial risk of serious harm with this plan. (UMF, 19.)

Additionally, the declaration of Dr. Evans establishes, plaintiff was rendered appropriate post-operative care and monitored appropriately. There was no failure to recognize any signs of injury or any delay caused in Dr. Liu's post-surgical management of this patient. (UMF, 42.)

With respect to the second TURP procedure, the fact that the patient required a second TURP procedure was not caused by any negligent act by Dr. Liu. It is considered a known risk of the procedure that a patient may require additional resection of the prostate after an initial TURP procedure requiring a second surgery, which is what occurred in this case. (UMF, 39.) Again, Dr. Evans' declaration establishes, to a reasonable medical probability that there was no negligent act or omission, or delay of care, on the part of Dr. Liu following the second TURP procedure that caused or contributed to the injuries and complications alleged by Mr. Rankins, including the complaints of a hernia, post-surgical pain or incontinence. (UMF, 40.)

In determining deliberate indifference, the Court scrutinizes the particular facts and looks for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect. The test is not met by merely establishing that an inmate did not receive the best possible medical care. Rather, an inmate states a cause of action under the Eighth Amendment by alleging that prison officials have exposed him to conditions "that pose an unreasonable risk of serious damage to his future health." (Helling v. McKinney (1993) 509 U.S. 25, 36) The condition must be one that creates a risk of harm "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such risk." (Id. at 36)

In order to establish deliberate indifference, plaintiff must have evidence that Dr. Liu knew that plaintiff faced a substantial risk of serious harm and disregarded an excessive risk to plaintiff's health or safety. (Farmer v. Brennan (1994) 511 U.S. 825, 837.) However, as established in the declaration of Christopher Evans, MD, the care provided by Dr. Liu was within the standard of care supporting Dr. Liu's decision that he was administering proper care. Further, as established by Dr. Liu, based on his review of the patient, along with his education, training and experience, there was no indication that the patient faced a substantial risk of serious harm with this plan.

The only evidence in this action stablishes that Dr. Liu's care "was not even negligent, much less 'deliberately indifferent' to plaintiff's medical needs. (See Hutchinson v. United States (9th Cir. 1988) 838 F.2d 390, 394.) Therefore, summary judgment should be granted.

**B. Plaintiff Cannot Establish The Necessary Element of Causation.**

As this court explained in Wilson v. Woodford (E.D. Cal. 2009) 2009 U.S. Dist. LEXIS 25749:

> "'Causation is 'a required element of a § 1983 claim.' Estate of Brooks v. United States, 197 F.3d 1245, 1248 (9th Cir.1999). 'The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.' Leer v. Murphy, 844 F.2d 628, 633 (9thCir.1988) (citing Rizzo v. Goode, 423 U.S. 362, 370-71, 96 S. Ct. 598, 46 L. Ed. 2d 561(1976)); Berg v. Kincheloe,794 F.2d 457, 460 (9th Cir.1986). Plaintiff must establish personal acts by each defendant which show a direct causal connection to the constitutional violation at issue. See Sanders v. Kennedy, 794 F.2d 478, 483 (9th Cir.1986). If there is no affirmative link between a defendant's conduct and the alleged injury, there is no deprivation of the plaintiff's constitutional rights. Rizzo, 423 U.S. at 370. Further, mere delay of medical care and/or treatment, which **did not cause harm**, is insufficient to state a claim of deliberate medical indifference, and Plaintiff will 'have no claim for deliberate medical indifference unless the denial was harmful." Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985) (*per curiam*) citing Estelle, 429 U.S. at 106."

(Id. at 78-79.)

In this action, plaintiff initially alleged that he developed a hernia as a result of Dr. Liu not performing a cystoscopy at the first post-operative visit following his TURP surgery. However, has since acknowledged that it would not have prevented the hernia since the records show the hernia developed *before* his first post-operative visit at issue with Dr. Liu. (UMF, 33.) Further, while

9

Riggio Mordaunt & Kelly
P.O. Box 7608
Stockton, CA 95267
(209) 473-8732

plaintiff alleges in the complaint that Dr. Liu "refused" to see him, he also clarified at deposition that his allegation is not that Dr. Liu did not consult with him at all that day. Instead, his complaint is on the extent of the consultation provided by Dr. Liu. Plaintiff alleges that as a result of Dr. Liu not performing a cystoscopy or other examination at his first post-operative visit he has developed incontinence. (UMF, 31-32.)

However, as established by the declaration of Christopher P. Evans, there was no failure to recognize any signs of injury or any delay caused in Dr. Liu's post-surgical management of plaintiff. Particularly in response to plaintiff's primary allegation that Dr. Liu did not perform any physical examination at the time of the March 20, 2014, Dr. Evans confirms this did not change the patient's outcome. (UMF, 40-42.)

There was no negligent act or omission, or delay of care, on the part of Dr. Liu following either TURP surgery that caused or contributed to the injuries and complications alleged by Mr. Rankins, including the complaints of a hernia, post-surgical pain or incontinence. Plaintiff was rendered appropriate post-operative care and monitored appropriately. While the patient appears to have experienced complications following the TURP surgeries, they were known risks which can and do occur in the absence of negligence and were appropriately disclosed to the patient prior to the surgery. None of the patient's symptoms, including post-surgical pain, hernia, and incontinence were caused by any negligent act by Dr. Liu, nor were any of the alleged injuries or symptoms caused by any delay in the care provided by Dr. Liu. (UMF, 40-44.)

Since plaintiff cannot meet his burden on the necessary element of causation, summary judgment should be granted.

///
///
///
///
///
///
///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALEXANDER LIU, MD'S MOTION FOR SUMMARY JUDGMENT

## IV. CONCLUSION

Based on the foregoing, Defendant Alexander Liu, MD respectfully request that the Court enter summary judgment in his favor and against Plaintiffs since plaintiff cannot meet his burden to establish any element necessary to support this 42 U.S.C. §1983 action.

Dated: October 18, 2018                          RIGGIO MORDAUNT & KELLY

By: /s/ Lori A. Reihl
Lori A. Reihl, Esq.
Attorneys for Defendant
ALEXANDER LIU, M.D.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALEXANDER LIU, MD'S MOTION FOR SUMMARY JUDGMENT