Michael R. Mordaunt, Esq., Bar No. 66911
Lori A. Reihl, Esq., Bar No. 246395
RIGGIO MORDAUNT & KELLY
A Professional Law Corporation
Mailing Address:  P.O. Box 7608
Stockton, CA  95267
Physical Address: 2509 W. March Lane, Suite 200
Stockton, CA  95207
Telephone: (209) 473-8732

Attorneys for Defendant
ALEXANDER LIU, MD

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

NORMAN RANKINS,                         )   Case No. 2:15-CV-01164-KJM-AC
                                        )
            Plaintiff(s),               )   **DECLARATION OF CHRISTOPHER P.**
                                        )   **EVANS, MD IN SUPPORT OF MOTION**
vs.                                     )   **FOR SUMMARY JUDGMENT**
                                        )
DR. ALEXANDER LIU,                      )
                                        )
            Defendant(s).               )
_____)

I, Christopher P. Evans, MD, declare as follows:

1.      I am a physician licensed to practice medicine in the State of California, specializing in urologic surgery.  I was certified by the American Board of Urology in 1999, recertified in 2007 and 2017 and have been a fellow of the American College of Surgeons since 2000.

2.      I received my medical degree from Dartmouth Medical School in Hanover, New Hampshire in 1986.  I performed a surgical internship at the Madigan Army Center in Tacoma, Washington, from 1986 to 1987.  From 1987 to 1988, I served as an emergency room General Medical Officer at the 121 Evacuation Hospital in Seoul, South Korea.  From 1988-1990 I served as the Chief of the Department of Experimental Surgery at the Walter Reed Army Institute of Research, in Washington, D.C.  I completed residencies at the University of California, San Francisco in surgery from 1990-1991 and urology from 1991-1995, serving as chief resident from 1994-1995.  I also completed a fellowship in urologic oncology at the University of Texas, M.D. Anderson Cancer Center from 1995-1997.

DECLARATION OF CHRISTOPHER P. EVANS, MD IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

3.      Since 2006 I have been the Chair of the Department of Urologic Surgery at the University of California, Davis School of Medicine, and have served on the faculty since 1997.  In the past I have also held the positions of Assistant Professor in Residence, Associate Professor in Residence, and Director of Urology Research Laboratories at University of California, Davis School of Medicine. I am currently President of the Society of Urologic Oncology. My complete curriculum vitae is attached hereto as Exhibit A.

4.      I am familiar with the customs and practice of urologists and surgeons performing transuretheral resection of the prostate (TURP), as well as the treatment and management of patients with symptoms and conditions as those presented by plaintiff Norman Rankins, including the management of surgical complications.

5.      I have reviewed the materials pertinent to this matter, including medical records from San Joaquin General Hospital, as well as plaintiff's second Amended Complaint and the records attached thereto.  I have also reviewed the deposition transcript of Norman Rankins which was taken in this matter.

6.      I am familiar with the facts and circumstances of this case. My opinions expressed herein are based on my review of these records and upon my education, training and experience.  I hold all of the opinions stated herein to a reasonable degree of medical probability.

7.      The materials I reviewed indicate that on February 3, 2014 patient, Norman Rankins, presented to Alexander Liu, MD at San Joaquin General Hospital for evaluation of BPH (benign prostatic hyperplasia) after unsuccessful trials of alpha blockers and finasteride.  The patient complained of nocturia four to five times every night, and daytime urinary frequency.  A prostate exam revealed an enlarged prostate with no obvious nodules and no signs of tenderness.  The patient was assessed with Lower Urinary Tract Symptoms (LUTS) with significant bladder outlet obstruction symptoms (benign prostatic hyperplasia, BPH) that were not relieved with medications. Dr. Liu concluded the patient may benefit from a TURP (transuretheral resection of the prostate) and presented this option to Mr. Rankins.

8.      Prior to the procedure, Dr. Liu discussed the risks and benefits of the procedure with the patient, including the risk of incontinence.  After discussing the risks and benefits, plaintiff

Riggio Mordaunt & Kelly
P.O. Box 7608
Stockton, CA 95267
(209) 473-8732

2

DECLARATION OF CHRISTOPHER P. EVANS, MD IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1  consented to proceed with the TURP surgery.

2      9.    The TURP surgery was performed by Dr. Liu on March 14, 2014 at San Joaquin

3  General Hospital.  During the procedure Dr. Liu found an enlarged prostate with trilobar

4  hyperplasia.  The prostate was resected without complication.  The patient was discharged the next

5  day on March 15, 2014 with pain medication and scheduled for post-operative follow up with Dr.

6  Liu.

7      10.    Plaintiff indicates that on or about March 18, 2014, he was seen by jail medical staff

8  for a small umbilical hernia.  According to plaintiff, that doctor at the prison reduced the hernia, but

9  it returned so he was sent to San Joaquin General Hospital for evaluation.  At the hospital, on

10  March 18, 2014, the patient reported a painful umbilical hernia for the last two to three days.  A CT

11  scan of the abdomen and pelvis revealed very tiny umbilical hernia containing only fat.  The

12  bladder was grossly normal.  The hernia was reduced and the patient was discharged back to prison.

13      11.    Plaintiff reports that when got back to the prison that day the hernia bulged out again

14  so he was referred for surgical repair.  Based on the records provided by plaintiff, the surgical

15  repair was eventually completed on or about April 11, 2014.

16      12.    On March 20, 2014, plaintiff was seen by Dr. Liu at his first post-operative visit.

17  Plaintiff expressed complaints of ongoing pain after surgery.  Plaintiff testifies that he also reported

18  complaints of difficulty urinating.  Dr. Liu also noted complaints of dysuria and hematuria, and that

19  examination showed no distended bladder.  Dr. Liu instructed the patient to return in 2 weeks to

20  evaluate whether his condition had improved, as his symptoms were still consistent with the post-

21  operative course of a TURP.  If his condition improved, the plan was to leave it alone.  If it had not,

22  Dr. Liu noted that a cystoscopy would be performed for further evaluation.

23      13.    The patient returned on April 7, 2014, with continued complaints of significant

24  irritative voiding symptoms.  With these continued complaints, a cystoscopy was performed as

25  planned.  The cystoscopy revealed that the prostate had not completely healed yet and there was

26  some debris blocking the prostatic urethral channel.  The debris material was broken up and pushed

27  back into the bladder, as it would likely spontaneously pass with urination.  Dr. Liu advised the

28  patient to return in 1 week to evaluate whether his symptoms had been relieved by this procedure.

Riggio Mordaunt & Kelly
P.O. Box 7608
Stockton, CA 95267
(209) 473-8732

3

DECLARATION OF CHRISTOPHER P. EVANS, MD IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

1   The patient was advised that if his symptoms persisted, he would require a further cystoscopy with

2   evacuation of debris from the bladder.

3          14.     Following that procedure, plaintiff continued to complain of dysuria and restriction

4   symptoms.  Dr. Liu concluded that the prostate was incompletely resected or the patient may have

5   scar tissue in the prostate and urethral area, and would need a repeat TURP.  Treatment options,

6   risks and benefits were discussed with the patient.  Plaintiff understood that there were risks

7   involved with a second TURP procedure, including incontinence, and consented to proceed with

8   the procedure.

9          15.     On May 9, 2014, Dr. Liu performed a cystoscopy and TURP which revealed some

10  residual prostate tissue and some areas that had not completed healed yet.  The procedure was

11  completed without complication and the patient was discharged home the next day on May 10,

12  2014.

13         16.     The patient returned to Dr. Liu on May 22, 2014 for a post-operative examination.

14  The patient reported ongoing complaints of significant pain and bladder spasms.  He continued to

15  follow up with Dr. Liu for treatment of incontinence through August 11, 2016.  Plaintiff continues

16  to complain of ongoing and permanent incontinence.

17         17.     Based upon my review of the pertinent medical records in this case, combined with

18  my training and experience, it is my professional opinion that Dr. Liu's care and treatment of

19  Norman Rankins was at all times appropriate and within the standard of care for a physician

20  practicing under similar circumstances.  It is my further opinion that there was no negligent act or

21  omission by Dr. Liu which constituted a substantial factor in causing the injuries alleged by

22  plaintiff.

23         18.     The patient, Norman Rankins, was an appropriate candidate to undergo the initial

24  TURP procedure in March 2014.  Both the type of surgery and the performance of the surgery by

25  Dr. Alexander Liu were appropriate and within the standard of care.

26         19.     The patient's complaints at the time of his visit with Dr. Liu on March 20, 2014,

27  including pain and difficulty urinating, are common post-surgical complaints following a TURP

28  procedure.  Dr. Liu's initial response of electing to wait another two weeks to evaluate whether the

Riggio Mordaunt & Kelly
P.O. Box 7608
Stockton, CA 95267
(209) 473-8732

4

DECLARATION OF CHRISTOPHER P. EVANS, MD IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

1  patient's post-surgical symptoms would resolve was appropriate and well within the standard of

2  care.  It was also appropriate and within the common practice of surgeons to not proceed with a

3  cystoscopy while the patient still healing from the initial TURP procedure, just as Mr. Rankins was

4  still healing at the time of the March 20, 2014 visit.  It is my professional opinion that plaintiff's

5  allegation that Dr. Liu did not perform any physical examination at the time of the March 20, 2014

6  did not change the patient's outcome.

7          20.     Moreover, it is my further professional opinion to a reasonable medical probability

8  that there was no negligent act or omission, or delay of care, on the part of Dr. Liu following the

9  TURP procedure that caused or contributed to the injuries and complications alleged by Mr.

10  Rankins, including the complaints of a hernia, post-surgical pain or incontinence.   The patient was

11  rendered appropriate post-operative care and monitored appropriately.  There was no failure to

12  recognize any signs of injury or any delay caused in Dr. Liu's post-surgical management of this

13  patient.

14          21.     Norman Rankins was also an appropriate candidate to undergo the second TURP

15  procedure.  The fact that the patient required a second TURP procedure was not caused by any

16  negligent act by Dr. Liu.  It is considered a known risk of the procedure that a patient may require

17  additional resection of the prostate after an initial TURP procedure requiring a second surgery,

18  which is what occurred in this case.   Both the type of surgery and the performance of the second

19  TURP surgery by Dr. Alexander Liu were appropriate and within the standard of care.

20          22.     Moreover, it is my further professional opinion to a reasonable medical probability

21  that there was no negligent act or omission, or delay of care, on the part of Dr. Liu following the

22  second TURP procedure that caused or contributed to the injuries and complications alleged by Mr.

23  Rankins, including the complaints of a hernia, post-surgical pain or incontinence.

24          23.     While the patient appears to have experienced complications following the TURP

25  surgeries, they were known risks which can and do occur in the absence of negligence and were

26  appropriately disclosed to the patient prior to the surgery.

27          24.     In summary, it is my professional opinion based on my education, training, and

28  experience as a urologic surgeon as well as upon my review of the above-described materials

Riggio Mordaunt & Kelly
P.O. Box 7608
Stockton, CA 95267
(209) 473-8732

5

DECLARATION OF CHRISTOPHER P. EVANS, MD IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT

1  related to this case, that the care and treatment provided to Norman Rankins by Dr. Liu was

2  appropriate, indicated, and well within the standard of care for a physician practicing under the

3  same or similar circumstances.

4       25.     It is my further opinion that there was no negligent act or omission by Dr. Liu, or

5  delay in care, which constituted a substantial factor in the injuries alleged by plaintiff.  None of the

6  patient's symptoms, including post-surgical pain, hernia, and incontinence were caused by any

7  negligent act by Dr. Liu, nor were any of the alleged injuries or symptoms caused by any delay in

8  the care provided by Dr. Liu.

9       I declare under penalty of perjury under the laws of the State of California that the

10  foregoing is true and correct and that this declaration was executed this _9_ day of __October__,

11  2018 at Sacramento, California

12                        By: _____

13                               Christopher P. Evans, MD

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF CHRISTOPHER P. EVANS, MD IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT