UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMAN RANKINS, | No. 2:15-cv-1164 KJM DB P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| ALEXANDER LIU, | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims defendant violated his rights under the Eighth Amendment. Presently before the court is defendant's fully briefed motion for summary judgment. For the reasons set forth below the court will recommend that defendant's motion for summary judgment be granted.

## BACKGROUND

### I. Procedural History

Plaintiff initiated this action by filing a complaint on May 29, 2015. (ECF No. 1.) The original complaint was dismissed during the screening process and plaintiff was given leave to amend. (ECF No. 11.) Plaintiff's first amended complaint (ECF No. 16) presented a cognizable claim and the magistrate judge assigned to the case at that time ordered service appropriate for defendant, Dr. Liu. (ECF No. 17.)

1

After being served defendant moved to dismiss. (ECF No. 28.) Plaintiff then filed a motion to amend. (ECF No. 35.) The court granted plaintiff's motion to amend and denied defendant's motion to dismiss as moot. (ECF No. 39.)

Plaintiff filed a third amended complaint (TAC). (ECF No. 40.) Thereafter, defendant filed a second motion to dismiss. (ECF No. 41.) The undersigned recommended that defendant's motion to dismiss be denied and the recommendations were adopted by the district judge. (ECF Nos. 45, 48.) Following discovery, defendant filed the instant motion for summary judgment. (ECF Nos. 53, 54.) After requesting and being granted several extensions of time, plaintiff filed an opposition to the summary judgment motion. (ECF No. 70.) Defendant filed a reply. (ECF No. 71.) Upon reviewing plaintiff's opposition (ECF No. 70), the court observed that plaintiff referenced exhibits in his opposition but had not attached any exhibits to the opposition. The court granted plaintiff the opportunity to file the referenced exhibits. (ECF No. 73.) Thereafter, plaintiff filed an additional document captioned "Opposition." (ECF No. 75.) In light of plaintiff's pro se status, the court has reviewed and considered both documents captioned as oppositions in its resolution of the pending summary judgment motion.

**II.     Allegations in the Complaint**

Plaintiff claims that defendant violated his right to adequate medical care under the Eighth Amendment. Plaintiff had a transurethral resection of the prostate ("TURP") procedure performed by defendant on March 14, 2014. (ECF No. 40 at 7.) Plaintiff alleges he informed defendant of post-operative complaints at a follow-up appointment on March 20, 2014. (Id.) Specifically, plaintiff indicated that he was in excruciating pain and could only urinate if straining to do so. (Id.) Plaintiff claimed defendant told him he was too busy to perform an examination. (Id.) Plaintiff repeated his symptoms and begged defendant to examine him. (Id.) However, plaintiff alleges defendant stated he would see plaintiff again in two weeks and if plaintiff was still symptomatic he would examine him at that time. (Id.)

On April 7, 2014, plaintiff had a second follow-up appointment with defendant. (Id. at 8.) Plaintiff claimed after he informed defendant his symptoms were worse, defendant performed a
////

2

flexible cystoscopy and found debris from the TURP procedure was blocking plaintiff's urethral channel causing plaintiff's pain and difficulty urinating. (Id.)

On May 9, 2014, defendant performed a second TURP procedure in response to plaintiff's continued symptoms. (Id. at 9.) Plaintiff saw defendant for a follow-up appointment on May 22, 2014 and informed defendant he no longer had control of his bladder. (Id.) Defendant told plaintiff his complete incontinence was permanent. (Id.)

Plaintiff claims defendant demonstrated callous indifference when he delayed examining plaintiff on March 20, 2014, causing him to suffer unnecessary pain, develop an umbilical hernia, and become permanently incontinent. (Id.)

## SUMMARY JUDGMENT

Defendant argues he is entitled to summary judgment because the undisputed facts show that he provided constitutionally adequate treatment and plaintiff cannot show a causal connection between the alleged constitutional violation and his harm. (ECF No. 54.)

In his opposition, plaintiff argues that he informed defendant of his symptoms and defendant failed to treat him in violation of his Eighth Amendment rights. (ECF No. 70.) Plaintiff's specifically disputes defendant's account and report regarding the March 20, 2014 appointment.

In his reply, defendant argues summary judgment should be granted because plaintiff has failed to meet his burden of proof on a necessary element of deliberate indifference. (ECF No. 71 at 4.) Defendant claims that plaintiff's only evidence in this action is that at the March 20, 2014 appointment he complained of pain and difficulty urinating. However, these are both common post-surgical complaints. (ECF No. 71 at 4.) Defendant further argues that even if plaintiff's disputed claim that defendant did not perform an exam on March 20, 2014 is true, it did not change plaintiff's outcome. (ECF No. 71 at 4.) Defendant additionally argues that plaintiff cannot claim that defendant's failure to treat him caused him to develop a hernia because such a claim is contradicted by plaintiff's deposition testimony. (ECF No. 71 at 5.)

////

////

## I. Legal Standards

### A. Summary Judgment Standards under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials

of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. at 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record is taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On a motion for summary judgment, it is inappropriate for the court to weigh evidence or resolve competing inferences. "In ruling on a motion for summary judgment, the court must leave '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate
////

inferences from the facts' to the jury." Foster v. Metropolitan Life Ins. Co., 243 Fed.Appx. 208, 210 (9th Cir. 2007) (quoting Anderson, 477 U.S. at 255).

## B. Deliberate Indifference under the Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320). In order to prevail on a claim of cruel and unusual punishment, however, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

For an Eighth Amendment claim arising in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. To prove that the response of prison officials to a prisoner's medical needs was constitutionally deficient, the prisoner must establish: (1) a serious medical need; and (2) deliberate indifference to that need by prison officials. See McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60.

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). In general, deliberate indifference may be shown when prison officials deny, delay, and intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires more than ordinary lack of due care for the prisoner's interest or safety." Farmer, 511 U.S. at 835 (citations omitted).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330,

////

332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

## II. Material Facts

Defendants filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a). (ECF No. 55.) Plaintiff's filing in opposition to defendants' motion for summary judgment fails to comply with Local Rule 260(b). Rule 260(b) requires that a party opposing a motion for summary judgment "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." Plaintiff indicates several areas of dispute within his opposition brief and filed a declaration containing his own recitation of the relevant facts supporting his claim. (Plaintiff's Statement of Facts ("PSF") ECF No. 70 at 6-8.)

The court is mindful of the Ninth Circuit's instruction that district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition which have evidentiary support in the record will be considered. While the parties dispute the characterization of some events and highlight different facts, most of the facts are undisputed.

### A. Undisputed Facts

At all relevant times plaintiff was an inmate within the California Department of Corrections and Rehabilitation. (DSUF (ECF No. 55) ¶ 1; PSF (ECF No. 70 at 6-8) ¶ 1.) Plaintiff was seen by defendant on February 3, 2014 regarding his complaints of frequent urination. (DSUF ¶ 1, 2; PSF ¶ 4.) Following a prostate exam, plaintiff was diagnosed with lower urinary tract symptoms with significant bladder outlet obstruction symptoms that could not be controlled with medications. (DSUF ¶ 3, 4.) Defendant determined a transurethral resection of the prostate (TURP) was a treatment option. (DSUF ¶ 5; PSF ¶ 4.) Defendant discussed the

8

TURP procedure as a treatment option with plaintiff. (DSUF ¶ 5, 6; PSF ¶ 4.) Plaintiff consented to the procedure following a discussion about the associated risks and benefits of the procedure, including the risk of incontinence. (DSUF ¶ 6, 7; PSF ¶ 4.)

On March 14, 2014, defendant performed the TURP procedure. (DSUF ¶ 8; PSF ¶ 5.) During the procedure, defendant resected plaintiff's enlarged prostate without complication. (DSUF ¶ 8; PSF ¶ 5.) Plaintiff was discharged the following day. (DSUF ¶ 9; PSF ¶ 5.)

Plaintiff states that on or about March 18, 2014, he was seen by prison medical staff for a small umbilical hernia. (DSUF ¶ 10; PSF ¶ 6.) A prison doctor reduced the hernia temporarily. (DSUF ¶ 10.) The hernia returned, and plaintiff was sent to an outside hospital for evaluation. (DSUF ¶ 10.) A computed tomography scan (CT) of plaintiff's abdomen and pelvis revealed a tiny umbilical hernia containing only fat and showed plaintiff's bladder was grossly normal. (DSUF ¶ 11.) Plaintiff's hernia was reduced for a second time and he was discharged. (DSUF ¶ 12.) Plaintiff's hernia bulged out again after he was returned to prison and he was referred for a surgical repair. (DSUF ¶ 13.) Plaintiff's hernia was surgically repaired on April 11, 2014. (DSUF ¶ 14.)

On March 20, 2014, plaintiff had a post-operative appointment with defendant. (DSUF ¶ 15 PSF ¶ 7.) Plaintiff informed defendant he was experiencing pain and difficulty urinating. (DSUF ¶ 16; PSF ¶ 7.) Defendant's notes summarizing the visit indicate that plaintiff complained of difficulty urinating, hematuria (or bloody urine), and that examination showed plaintiff's bladder was not distended. (DSUF ¶ 17.) Defendant instructed plaintiff to return for an additional post-operative visit in two weeks to evaluate whether his symptoms had resolved or required additional treatment. (DSUF ¶ 18.) Defendant indicated that a cystoscopy would be performed for further evaluation if plaintiff's symptoms had not resolved at that time. (DSUF ¶ 18.)

Plaintiff had a second post-operative appointment with defendant on April 7, 2014. (DSUF ¶ 20; PSF ¶ 9.) Plaintiff reported that he was still having trouble urinating. (DSUF ¶ 20; PSF ¶ 9.) Defendant performed a cystoscopy. (DSUF ¶ 21; PSF ¶ 9.) The cystoscopy showed that the prostate was not completely healed and there was some debris blocking the prostatic

9

urethral channel. (DSUF ¶ 22; PSF ¶ 9.) The debris was broken up and pushed back into the bladder where it could possibly spontaneously pass with urination. (DSUF ¶ 22; PSF ¶ 9.)

Following the cystoscopy plaintiff continued to suffer from difficultly urinating. (DSUF ¶ 24.) Defendant determined that plaintiff's prostate was incompletely resected or that he had scar tissue in the prostate and urethral area. (DSUF ¶ 25.) In order to resolve plaintiff's symptoms, defendant recommended a second TURP procedure. (DSUF ¶ 5; PSF ¶ 9.) Plaintiff elected to proceed with a second TURP procedure. (DSUF ¶ 26.)

On May 9, 2014, defendant performed a cystoscopy and a second TURP procedure, revealing some residual prostate tissue and some areas that had not completely healed yet. (DSUF ¶ 27; PSF ¶ 10.) Plaintiff was discharged the following day. (DSUF ¶ 28.) At a post-operative visit on May 22, 2014 plaintiff reported that he suffered from significant pain and bladder spasms. (DSUF ¶ 29; PSF ¶ 10.) Plaintiff was treated by defendant for incontinence through August 11, 2016. (DSUF ¶ 30.)

### B. Disputed Facts

The main dispute between the parties relates to their accounts of what occurred during the March 20, 2014 appointment. However, as set forth below, these factual disputes are not material.

Plaintiff states defendant did not examine him as set forth in defendant's notes summarizing the March 20, 2014 appointment. (ECF No. 70 at 3.) As plaintiff does not dispute that he was seen by defendant on March 20, 2014, the court construes this statement to indicate that defendant did not conduct a physical examination of plaintiff's person at the March 20, 2014 appointment. Additionally, plaintiff alleges defendant's statement in the notes from the March 20, 2014 appointment, indicating plaintiff's bladder was not distended, cannot be correct because defendant did not examine him on that date. (Id.)

Plaintiff also disputes defendant's statement in his report detailing the March 20, 2014 visit stating that plaintiff seemed able to empty his bladder. (Id.) Plaintiff claims he told defendant "that he was not able to urinate, and when he did, it was only after painfully straining to get a little out." (Id.)

10

### III. Analysis

#### A. Plaintiff's Condition Constituted a Serious Medical Need

The court finds, that based on the evidence presented by the parties for purposes of summary judgment, a reasonable juror could find that plaintiff's symptoms, frequent urination, difficulty urinating, and post-operative pain, constitute an objective, serious medical need. See McGuckin, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."); see also Canell v. Brashaw, 840 F.Supp. 1382, 1393 (D. Or. 1993) (the Eighth Amendment duty to provide medical care applies "to conditions that may result in pain and suffering which serve no legitimate penological purpose."). Accordingly, the court's analysis will focus on defendant's response to plaintiff's serious medical need.

#### B. Plaintiff has not Shown Hernia was Caused by Delay in Treatment

Plaintiff alleged in the complaint that defendant's failure to treat plaintiff's post-operative symptoms at the March 20, 2014 appointment caused him to develop a hernia. (ECF No. 40 at 8.) Defendants argue that plaintiff's development of a hernia was not caused by the delay in treatment. (ECF No. 54 at 9-10.) Plaintiff has acknowledged that he developed the hernia before his initial post-operative appointment with defendant. (ECF No. 70 at 2.) Thus, plaintiff cannot show that the alleged delay, caused plaintiff's hernia because plaintiff developed the hernia before March 20, 2014. Cramer v. Target Corp., No. 1:08-cv-1693 SKO, 2011 WL 5873401 at *18 (E.D. Cal. Nov. 22, 2011) ("The question for purposes of Plaintiff's claim, however, is not whether the injuries he sustained [], have caused him further harm, but whether the delay in treatment caused him any further harm. It is the delay in treatment that is the essence of Plaintiff's civil rights claim for deliberate indifference, not the harm he suffered as a result of his injury in and of itself.").

////

////

### C. Difference of Medical Opinion not Sufficient

Plaintiff's main argument in opposition is that defendant should have done more at the March 20, 2014 appointment. Specifically, plaintiff believes that he would have had a better outcome if defendant had performed a cystoscopy on March 20, 2014. (ECF No. 58-1 at 18.) However, plaintiff is not a medical expert and cannot opine on the best course of treatment. Nor has he presented testimony from a medical expert in support of his position. At best, plaintiff has shown that he holds a difference of opinion concerning the proper course of treatment. It is well established that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson, 90 F.3d at 332; Franklin, 662 F.2d at 1344. Thus, in order to defeat summary judgment, plaintiff must show that the course chosen by defendant was medically unacceptable under the circumstances and that defendant was aware of the risk posed by the chosen course. Jackson, 90 F.3d at 332; Farmer, 511 U.S. at 840.

Defendant argues that plaintiff's complaints of pain and difficult urination conveyed during the March 20, 2014 appointment, are common post-surgical complaints following a TURP procedure. (ECF No. 54 at 7; DSUF ¶ 36.) In support of his argument, defendant presented evidence, in the form of an expert opinion, showing that defendant's decision to wait another two weeks to evaluate whether plaintiff's post-surgical symptoms would resolve was appropriate and well within the standard of care. The expert also stated that it was appropriate and within the common practice of surgeons to not proceed with a cystoscopy while a patient is still healing from a TURP procedure, as plaintiff was. (ECF No. 54 at 8; ECF No. 57 at 5.)

Plaintiff has disputed the statement in defendant's notes indicating that an "exam" showed that plaintiff's bladder was not distended. (ECF No. 70 at 3.) Plaintiff argues this statement must be false because defendant did not examine him on March 20, 2014. However, assuming plaintiff's account is correct, defendant's expert has stated that even if defendant had physically examined plaintiff, it would not have made a difference because defendant's post-operative management was appropriate. (ECF No. 57 at 5; ECF No. 71 at 4-5.) Although the parties disagree about what occurred during the March 20, 2014 appointment, defendant has put forth evidence, not disputed by plaintiff, showing that this disagreement is immaterial.

12

To defeat defendant's motion for summary judgment, plaintiff must "produce at least some significant probative evidence tending to [show]," T.W. Elec. Serv., 809 F.2d at 630, that defendant's actions or failure to act, was "in conscious disregard of an excessive risk to plaintiff's health," Jackson, 90 F.3d at 332 (citing Farmer, 511 U.S. at 837). Plaintiff states he will present expert evidence showing that defendant's actions were clearly unreasonable in the medical field. (ECF No. 70 at 5.) However, as plaintiff was previously instructed (see ECF No. 19 at 6), he is required to show proof of his claims in an opposition to properly oppose a summary judgment motion.

Although plaintiff clearly believes that he would have had a better outcome if defendant had performed a cystoscopy at the March 20, 2014 appointment, plaintiff is not a doctor, and he has not presented any medical evidence demonstrating that defendant's approach to plaintiff's symptoms was medically unacceptable. Plaintiff's opinion as to what was or was not proper care, does not create a triable issue. See Estelle, 429 U.S. at 106; see also Sanchez, 891 F.2d at 242 (difference of opinion regarding medical treatment does not amount to deliberate indifference).

Accordingly, the court will recommend that defendant's motion for summary judgment be granted because the undisputed facts fall short of demonstrating deliberate indifference.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 54) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captions "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The

////

////

////

13

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 17, 2019

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:12
DB:1/Orders/Prisoner/Civil.Rights/rank1164.f&r.msj